UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JOHN DOE,**
Plaintiff,
-against-
**NEW YORK UNIVERSITY, d/b/a NYU GROSSMAN SCHOOL OF MEDICINE and PRESTON ROBERT TISCH CENTER FOR MEN'S HEALTH,**
Defendant.

Case No. __________

## COMPLAINT

Americans with Disabilities Act, Title III, 42 U.S.C. §§ 12181-12189; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116

**JURY TRIAL DEMANDED**

Plaintiff John Doe, proceeding pro se and contemporaneously moving for leave to proceed under a pseudonym, alleges as follows:

## NATURE OF THE ACTION

1. This is a federal disability-discrimination action arising from the denial of meaningful access to healthcare after Defendant had actual, longstanding knowledge that Plaintiff's disabilities substantially impaired his ability to attend conventional in-person medical appointments.

2. Plaintiff has severe agoraphobia, anxiety, depression, PTSD, and related chronic conditions. These conditions substantially limit major life activities including leaving home and participating in conventional face-to-face medical encounters.

3. Defendant's physician, Mon Vera, M.D., documented Plaintiff's disability-related limitations years before the events at issue. On February 17, 2021, Dr. Vera wrote that Plaintiff suffered from multiple chronic conditions, that one condition made video chats or face-to-face communication intolerable because it caused anxiety, self-consciousness, and depression, and that Plaintiff also suffered from PTSD. The letter thanked its recipient for extending Plaintiff a reasonable accommodation.

4. Plaintiff later moved away and returned to New York in 2023. The access dispute alleged here arose after his return. Defendant acknowledges that Plaintiff participated in an audio-only medical visit with Dr. Vera on June 5, 2023.

5. By late 2023 and early 2024, Plaintiff needed continued medical care and disability-related medical documentation but could not attend a conventional in-person visit because of his disabilities. Plaintiff repeatedly told Defendant of that barrier and sought alternative access.

6. On March 1, 2024, Plaintiff wrote to Dr. Vera that it was not his fault that he was agoraphobic and that required forms were due. Dr. Vera responded that he would not complete them without seeing Plaintiff. Plaintiff then asked whether they could have a telehealth appointment. Dr. Vera responded, "no."

7. Plaintiff did not simply refuse care. He asked Defendant to collaborate on a disability-access solution. In a subsequent written message, Plaintiff stated that he was not refusing service, explained that he was agoraphobic, and identified the refusals of a phone call, telehealth, and paperwork.

8. Plaintiff also challenged the refusal because Defendant had previously represented that a virtual visit could be scheduled and because Plaintiff had successfully used telehealth with another physician.

9. Defendant's own clinical record independently documents the disability barrier. A September 12, 2023 clinical note states that Plaintiff had agoraphobia issues, wanted a phone appointment with Dr. Vera, and was unable to leave his apartment very often because of agoraphobia.

10. Plaintiff additionally proposed home or mobile phlebotomy so necessary laboratory testing could be completed without requiring him to leave home. Plaintiff alleges Defendant did not meaningfully explore that or another effective alternative.

11. Defendant instead maintained the in-person condition and failed to provide a workable modification addressing Plaintiff's known disability barrier. Plaintiff alleges that this disrupted access to medical care, medication continuity, and disability-related documentation during a period of medical vulnerability.
12. Plaintiff alleges he told Dr. Vera that medication was not serving its purpose and that he was resistant to it, yet additional accessible evaluation and laboratory testing were not obtained to identify a more effective regimen or alternative pathway. Plaintiff possesses longitudinal medical evidence documenting severe and prolonged immunologic impairment. Plaintiff intends to offer qualified medical testimony concerning the nature and duration of his physical condition and any medically supportable causal connection between the denial of accessible care and physical injury, aggravation, or prolongation of injury.
13. Plaintiff does not ask the Court to infer medical causation from laboratory results alone. He alleges that, after Defendant knew disability prevented conventional in-person access and after Plaintiff repeatedly requested feasible alternatives, Defendant denied or failed to assess those alternatives and failed to provide meaningful equal access to its healthcare program.
14. Plaintiff does not attach his intimate medical records, account records, residential address, or identifying exhibits to this public complaint. Those materials contain highly sensitive identifying information and can be provided through a confidential procedure the Court directs.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under Title III of the ADA, 42 U.S.C. §§ 12181-12189, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.
16. This Court has authority to grant relief authorized by 42 U.S.C. § 12188, 29 U.S.C. § 794a, 42 U.S.C. § 18116, and other applicable federal law.
17. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in New York County and the healthcare practice at issue operated in Manhattan.

## PARTIES

18. Plaintiff John Doe is a person with a disability within the meaning of the ADA and Section 504. His true name, address, and contact information are withheld from the public docket pending the Court's ruling on his pseudonym motion.
19. Defendant New York University is a New York educational institution that, through NYU Grossman School of Medicine, operated the Preston Robert Tisch Center for Men's Health and the healthcare program at issue. In an administrative position statement, Defendant stated that NYU Grossman School of Medicine is an administrative division of New York University and that Dr. Vera saw patients at the Tisch Center.
20. On information and belief, the relevant New York University health program or activity receives federal financial assistance and is subject to Section 504 and Section 1557. The precise sources and scope of federal financial assistance are principally within Defendant's possession and control.
21. At all relevant times, Dr. Vera acted within the scope of his work for Defendant's healthcare program. Plaintiff does not presently name Dr. Vera as an individual defendant under the ADA, Section 504, or Section 1557.

## FACTUAL ALLEGATIONS

22. Dr. Vera's February 17, 2021 letter establishes that Defendant had actual knowledge, before the events at issue, of chronic medical and psychiatric conditions that materially affected Plaintiff's ability to participate in face-to-face medical encounters.
23. After Plaintiff returned to New York in 2023, Defendant continued to provide medical services to him, including an audio-only encounter on June 5, 2023.
24. On September 12, 2023, Defendant's clinical record documented that Plaintiff was unable to leave his apartment very often because of agoraphobia and wanted a phone appointment with Dr. Vera.

25. In or about October 2023, Plaintiff requested medical documentation needed to support workplace accommodation and leave protections. Defendant later asserted that an in-person examination was necessary before Dr. Vera would complete the documentation.
26. Plaintiff continued seeking a workable means of obtaining care and documentation. He requested telephone and telehealth access and proposed remote or home phlebotomy.
27. On March 1, 2024, Plaintiff expressly identified agoraphobia as the reason he could not satisfy the in-person requirement and asked for telehealth. Dr. Vera expressly refused the telehealth request.
28. Plaintiff's written messages show that he sought collaboration rather than simply abandoning treatment. He expressly asked why Defendant would not collaborate on a solution and identified the refusals of a phone call, telehealth, and paperwork.
29. Defendant later took the position in an administrative proceeding that Plaintiff had refused telehealth or a phone call. Plaintiff's contemporaneous writings show the opposite: Plaintiff affirmatively requested both remote access and collaboration.
30. On April 11, 2024, Defendant communicated that regular visits were recommended for continued prescriptions and patient safety and instructed Plaintiff to schedule an appointment. Plaintiff alleges this communication retained the unresolved in-person access barrier rather than offering an effective modification.
31. On May 3, 2024, Plaintiff described his proposal for home blood work, his willingness to use telehealth, and his request for a provider who could provide accessible care.
32. Plaintiff alleges Defendant did not conduct a meaningful individualized assessment of whether the requested alternatives, alone or in combination, could provide access while addressing legitimate clinical needs.
33. The access barrier affected continuity of care, prescriptions, and disability-related workplace documentation. Plaintiff alleges that it impaired his ability to maintain workplace protections and to continue working during a period of serious medical vulnerability.
34. Plaintiff was hospitalized multiple times after the access failures. He alleges that inaccessible care and resulting physical deterioration compounded existing mental-health conditions and made continued work intolerable. Plaintiff will rely on objective medical records and qualified medical testimony to establish the nature, duration, aggravation, or prolongation of physical injury and any medically supportable causal connection.
35. Plaintiff alleges economic loss, including lost income, employment benefits, medical expenses, and other out-of-pocket loss, in amounts to be established through records, discovery, and trial.
36. Plaintiff genuinely intends to consider and seek healthcare from NYU again in the future if he needs services available through its healthcare system and can obtain them on nondiscriminatory, disability-accessible terms.
37. Plaintiff remains deterred from returning because the disability-access barrier alleged here has not been resolved and because he has no assurance that future requests for accessible alternatives will receive an individualized, lawful assessment.
38. Plaintiff therefore seeks prospective relief requiring Defendant to evaluate disability-related requests for reasonable modifications on an individualized basis and to provide equal access as required by federal law.

## COUNT I TITLE III OF THE AMERICANS WITH DISABILITIES ACT

39. Plaintiff repeats and realleges paragraphs 1 through 38.
40. Plaintiff is an individual with a disability within the meaning of the ADA.
41. Defendant owns, leases, or operates a professional office of a healthcare provider and other places of public accommodation covered by 42 U.S.C. § 12181(7).
42. Plaintiff sought and genuinely intends in the future to consider and seek the goods and services of Defendant's healthcare system on nondiscriminatory terms.
43. Reasonable modifications to Defendant's usual methods of providing access were necessary because Plaintiff's known disabilities substantially impaired his ability to attend conventional in-person appointments.
44. Plaintiff requested modifications including telephone access, telehealth, remote alternatives, and home or mobile phlebotomy. Defendant had actual notice of the disability-related need for modification.

45. Defendant expressly denied telehealth and failed to provide an effective alternative or meaningful individualized assessment despite Plaintiff's repeated requests and Defendant's own documentation of his inability to leave home because of agoraphobia.
46. Defendant categorically denied Plaintiff's telehealth request after receiving notice that agoraphobia prevented in-person attendance. Defendant did not conduct an individualized assessment, explain why a remote encounter could not meet the purpose of the requested service, or offer an effective alternative, including telephone access, remote paperwork, home or mobile phlebotomy, referral, or another accessible means of care. Plaintiff further proposed consideration of a home-based physical examination by another clinician whose results could be shared with Defendant. Plaintiff alleges that this failure denied full and equal enjoyment of Defendant's healthcare services in violation of 42 U.S.C. § 12182.
47. Plaintiff remains deterred by the unresolved access barrier and faces a risk of encountering the same challenged practice if he seeks Defendant's services in the future.

## COUNT II SECTION 504 OF THE REHABILITATION ACT

48. Plaintiff repeats and realleges paragraphs 1 through 47.
49. Plaintiff is an individual with a disability and was otherwise qualified to receive Defendant's healthcare services with reasonable modifications to access.
50. Defendant operates a program or activity receiving federal financial assistance within the meaning of Section 504.
51. Plaintiff was excluded from, denied the benefits of, and/or denied meaningful equal access to Defendant's healthcare program by reason of his known disability when Defendant maintained an in-person access requirement that Plaintiff could not satisfy because of disability, expressly rejected telehealth, and failed to provide an effective alternative despite repeated notice and requests.
52. Defendant had actual knowledge of Plaintiff's disability and of the substantial likelihood that its unmodified access requirements would deny Plaintiff meaningful access.
53. Plaintiff repeatedly identified the disability barrier and requested specific alternatives. Defendant's own records documented the barrier, and Dr. Vera had personally documented related disability limitations years earlier.
54. Despite that notice, Defendant failed to take reasonable steps sufficient to provide meaningful access. Plaintiff alleges deliberate indifference to his federally protected right to nondiscriminatory access to a federally assisted healthcare program.
55. As a direct and proximate result of the violation, Plaintiff alleges physical injury, aggravation or prolongation of physical illness, and economic loss to the extent established in discovery and at trial. Plaintiff seeks all compensatory and other relief legally recoverable under the claims sustained. Plaintiff recognizes that emotional-distress damages are unavailable under Section 504 itself and pleads emotional and psychological harm only for any legally relevant purpose.

## COUNT III SECTION 1557 OF THE AFFORDABLE CARE ACT

56. Plaintiff repeats and realleges paragraphs 1 through 55.
57. Defendant operates a health program or activity, at least part of which receives federal financial assistance.
58. Section 1557 incorporates disability-discrimination protections and enforcement mechanisms available under Section 504 for a covered health program or activity.
59. For the reasons alleged above, Defendant denied Plaintiff equal access to covered healthcare by reason of disability in violation of Section 1557.
60. Plaintiff seeks relief legally available under Section 1557 without duplicative recovery.

## PRAYER FOR RELIEF

• Enter judgment in Plaintiff's favor on the ADA Title III, Section 504, and Section 1557 claims;
• Enter appropriate prospective declaratory and injunctive relief, including relief requiring Defendant to evaluate disability-related requests for reasonable modifications through an individualized process and to provide nondiscriminatory access as required by law;

• Award compensatory damages legally recoverable for proven economic loss and physical injury, aggravation, or prolongation of injury;
• Award taxable costs, any fees or expenses recoverable under applicable law, and pre- and post-judgment interest to the extent permitted; and
• Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE, Plaintiff, v. NEW YORK UNIVERSITY, Defendant.

## SIGNATURE PAGE TO COMPLAINT

I certify that I have reviewed the attached filing and submit it pro se.

Dated: September 15, 2026

**Signature:** ______________________________

John Doe, Plaintiff Pro Se

Legal name and contact information are supplied in the separate confidential identification sheet.